HARRY KAUFMAN, Inc., v. UNITED
STATES.

No. 44395.

Court of Claims.

June 4, 1945.

Maurice H. Thatcher, of Washington, D. C. (Fred B. Rhodes, of Washington, D. C., on the brief), for plaintiff.

John B. Miller, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHALEY, Chief Justice.

The plaintiff is a wholesale and retail dealer, purchasing goods from jobbers and manufacturers and reselling them. Its activities are confined to merchandizing. It does not manufacture. It is suing here for increased costs incurred as a result of enactment of the National Industrial Recovery Act, 48 Stat. 195, as authorized by the act approved June 25, 1938, 52 Stat. 1197, 41 U.S.C.A. § 28 note, giving this court jurisdiction to hear and render judgment upon claims of Government contractors.

The plaintiff here was such a contractor.

In response to an invitation it submitted certain bids to the Treasury Department. Four of them were opened February 1, 1933, and one February 17, 1933. The business solicited by the plaintiff was the furnishing of some of the items for the fiscal year ending June 30, 1934, enumerated by classes in the well-known General Schedule of Supplies of the General Supply Committee, Treasury Department. The plaintiff with its bids furnished bond to accept the contract on any item awarded. It was the successful bidder on certain items, and as to these items, pursuant to the terms of its bid and bid-bond, it entered into a formal contract with the defendant July 1, 1933, to supply them.

The General Supply Schedule is printed and distributed. It bears the name of each contractor and the unit contract price against particular items. By reference to it a Government agency desiring an article may at any time during the fiscal year order it of the contractor named in the schedule and the contractor furnishes it at the agreed price, also named in the schedule.

Under this agreement Government agencies might call upon the plaintiff for large or small quantities, or none at all.

With this method of doing business, quantities and dates of delivery not being predetermined, the plaintiff did not make firm contracts in advance with manufacturers or jobbers. The plaintiff of course did not know what quantities the Government, in the course of the fiscal year, would demand, or when. What the plaintiff did in preparing its bid, was to rely on prices quoted to it by manufacturers or jobbers. These quotations were necessarily given before the opening of bids February 1 and 17, 1933, and the contract price, based on such

quotations, was applicable for one year beginning July 1, 1933. There was thus a five-month period from quotation to the beginning of the contract period, and nearly a year and a half to the end of the contract period. The plaintiff, being bonded to accept the award, could not thereafter withdraw its bid.

There was an increase in prices from those quoted to the plaintiff in or before February, 1933, to those paid by the plaintiff to fulfill the supply contract. So much of that increase as was a result of enactment of the National Industrial Recovery Act, except as to items on which there was a profit, plaintiff here seeks to recover under the act of June 25, 1938. No labor performed by the plaintiff is involved.

It is to be noted that the plaintiff was a merchant, and that the goods it purchased and sold had already gone through manufacturing processes. The national industrial recovery program endeavored to and did reverse the downward trend of wages, with the natural result that materials on which labor was expended, that is to say manufactured goods, tended to increase in price, as wages increased. This was of course true with respect to goods already manufactured, as well as those in the process of manufacture.

The effect of wage fluctuations on the price of goods passing through the hands of many skilled wage-earning operatives, may be considerable. But it does not necessarily follow that a wage increase is precisely reflected in the selling price. There are too many influences present in arriving at a price agreeable to vendor and vendee for anyone to say that a specific wage increase is fully incorporated in the negotiated price.

In the background of vendor and vendee, as they sit across the table dickering on a price, stand competitors, tax assessors, manufacturers, jobbers, market reporters, the ever-present supply and demand, the relative strength in the market of the negotiators, and other factors familiar to the business world. So that as a matter of practical application it is impossible to segregate any exact part of an increase in the price of goods and definitely and finally say that that exact amount is the result of enactment of the National Industrial Recovery Act.

But it is manifest that Congress had in mind the existence of such increases in the price of material, the result of enactment of the National Industrial Recovery Act, for Congress provided for their recovery. The Congress recognized the situation as having actuality, and in the case of Government contractors, deserving remedial measures.

In the case of Phillips v. United States, 102 Ct.Cl. 446, a case arising under the same act as here, it was said that the burden of proof was always on the plaintiff to establish his case by a "preponderance of evidence." This was said with reference to labor costs, which the court did not allow in judgment because that burden had not been met.

But in the case we have here, involving a disputed increase in cost of materials, we think that the burden of proof by a preponderance of the evidence has been met. The plaintiff's principal witness, a highly-placed officer of the plaintiff corporation, testified to the effect that the increase was the result of enactment of the National Industrial Recovery Act, and he was especially qualified to testify on that point because he was not only directly involved in the buying and selling of the goods in question, but he had had a generation of experience, going in and out of and circulating within the market. A business man of that experience is entitled to be heard, and his testimony calls for rebuttal at the same level, which the defendant did not undertake to offer. There was one witness only for the defendant, an accountant, who expressly disqualified himself to testify as to whether the "N. R. A." increased or decreased the cost of the goods. He was not an expert on market affairs. It is manifest that the books of account would not disclose the increases that are here in issue, and he frankly stated his inability to discover them. His testimony is to be evaluated on an accounting basis and is not to be accepted on matters outside his qualifications.

The plaintiff has suffered a loss due to the increase in cost attributable to the National Industrial Recovery Act for which he should be compensated.

The evidence is not sufficient to measure that loss exactly. However, taking all the evidence into consideration and acting as a jury of reasonable men would act under the circumstances, we think the plaintiff would be fairly and equitably compensated by the award of $4,000.00

A judgment for $4,000.00 will be entered for the plaintiff.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.